# United States Court of Federal Claims

No. 18-465 C
(Filed Under Seal: April 13, 2018)
(Reissued: May 9, 2018)[1]

_____

**INTELLIGENT WAVES, LLC,**

    *Plaintiff,*

v.

**UNITED STATES OF AMERICA,**

    *Defendant,*

**and**

**SYSTEMS MADE SIMPLE, INC.,**

    *Defendant-Intervenor.*

_____

Injunctive Relief; Department of Veteran Affairs; Competition in Contracting Act; CICA Stay; Bid Protest; Declaratory Judgment

*Lee Dougherty, Esquire*, Montgomery Fazzone PLLC, Washington, D.C., for plaintiff.

*Alexis J. Echols, Esquire*, U.S. Department of Justice, Commercial Litigation Division, Washington, D.C., for defendant.

*Daniel R. Forman, Esquire*, Crowell & Moring LLP, Washington, D.C., for defendant-intervenor.

### ORDER AND OPINION

**Hodges, *Senior Judge.***

    Plaintiff protested a task order awarded to intervenor Systems Made Simple by the Department of Veterans Affairs. The Competition in Contracting Act ("CICA") imposes a

---

[1] We issued this Opinion under seal on April 13, 2018, and invited counsel to propose redactions prior to its publication. Neither party requested any redactions. The April 13, 2018 Opinion is hereby reissued for publication, unsealed, with no alterations.

mandatory stay on further contract action in such circumstances until the Government Accounting Office ("GAO") issues a ruling on the protest. However, CICA allows government agencies to override the stay when they can make a showing that it would serve the "best interests" of the United States. Veterans Affairs issued an override in this case, claiming that the override would serve the Government's interests.

Plaintiff sued for a declaration that the agency's override of the stay was arbitrary and capricious and therefore in violation of law. It also petitioned for a preliminary injunction. It became clear during a hearing on April 4, 2018, that the Department of Veterans Affairs did not have appropriate justification for issuing the override. As defendant has not made a sufficient showing in support of the agency's decision to override, we find that the override decision was arbitrary and capricious. The automatic stay is reinstated.

## BACKGROUND

The Department of Veteran Affairs awarded contracts to twenty-nine entities in support of the Department's "Transformation Twenty-One Total Technology Next Generation" multiple-award, indefinite delivery/indefinite quantity contract. Plaintiff was among those awarded a "Veteran-Owned" contract. The agency issued a solicitation for a "Request for a Task Execution Plan" to support certain operations services in November 2017, and plaintiff filed a timely response thereafter. The operations services contracted for were similar to those being performed at the time by intervenor Systems Made Simple ("SMS") under a prior task order.

The agency issued a contract to intervenor SMS to perform the new task order several months later, on March 7, 2018. Plaintiff obtained an in-person debriefing on March 15, and filed a bid protest with GAO on March 20. GAO notified Veterans Affairs of the protest and the automatic stay on March 21. The agency issued an override based on the "best interests" of the United States on March 27.

## STANDARD OF REVIEW

This court has jurisdiction over objections to an agency's override of the automatic stay required under CICA. 28 U.S.C. § 1491(b)(2011) ("Tucker Act"). Consideration of the stay is entirely separate from any review of the contract award to which it relates. *See RAMCOR Servs. Grp., Inc. v. US*, 185 F.3d 1286, 1290 (Fed. Cir. 1999); *PGBA, LLC v. United States*, 57 Fed. Cl. 655, 658 (2003) (stating that the court "review[s] the merits of an override independent of any consideration of the merits of the underlying contract award.").

Authority for the automatic stay and the limitations on its override comes from CICA. 31 U.S.C. §3553. That Act provides that an agency may override the automatic stay

only "upon a written finding that—(I) performance of the contract is in the best interests of the United States; or (II) urgent and compelling circumstances that significantly affect the interest of the United States will not permit waiting for the decision of the Comptroller General concerning the protest." 31 U.S.C. §3553(d)(3)(C).

An agency's decision to override an automatic stay is reviewed according to the standards provided in the Administrative Procedure Act. 5 U.S.C. § 706 (2006). The standard for review is whether the override was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A decision is arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of US, Inc. v. State Farm Mut. Auto. Ins. Co,* 463 U.S. 29, 43, (1983).

## DISCUSSION

This court regularly applies a four-part test to determine whether an agency override of a CICA stay based on urgent and compelling circumstances was "arbitrary and capricious." *See Reilly's Wholesale Produce v. United States,* 73 Fed. Cl. 705, 711 (2006).[2] In weighing its decision to override the stay, the agency considered the four *Reilly* factors, despite stating that the decision was based on the "best interests" exception rather than "urgent and compelling circumstances." Plaintiff also relies heavily on these factors in arguing that the override should be declared invalid. However, the focus here is on the

---

[2] *Reilly's Wholesale Produce* sets forth the following four-part test:

> (i) whether significant adverse consequences will necessarily occur if the stay is not overridden ...; (ii) conversely, whether reasonable alternatives to the override exist that would adequately address the circumstances presented ...; (iii) how the potential cost of proceeding with the override, including the costs associated with the potential that the GAO might sustain the protest, compare to the benefits associated with the approach being considered for addressing the agency's needs ...; and (iv) the impact of the override on competition and the integrity of the procurement system, as reflected in [CICA]....

standard provided by the Administrative Procedures Act as this court has interpreted it in relation to the "best interest" exception.

### A. "Best Interests"

Presumably, prompt performance of most contracts awarded by government agencies would be in the country's best interests or the contracts would not be awarded in the first place. It follows that the justification for an automatic stay override mandated by Congress requires something more than showing that the contract's original purpose serves the United States' interests. *See Nortel Gov't. Solutions, Inc. v. United States*, 84 Fed. Cl. 243, 247-248 (2003) (explaining that a best interests determination calls for more than an argument that the override serves the original purpose of the contract) (citations omitted); *see also Advanced Sys. Dev.*, 72 Fed. Cl. 25, 31 (2006); *PGBA*, 57 Fed. Cl. at 662. An assertion that a new contract is in essence better than a current one is not sufficient to show "best interests." *Advanced Sys. Dev.*, 72 Fed. Cl. at 31 ("To allow a best interests determination to rest on such a common ground would permit the override exception to swallow the Congressionally mandated rule that stays be automatic.")(citations omitted).

This court has provided varying interpretations as to whether the standards for "urgent and compelling" should be stricter than those for "best interests." *See Spherix, Inc. v. United States*, 62 Fed. Cl. 497, 505 (2004) (noting that "one of the two justifications recognized by the CICA for allowing a stay is minimal; hence, plaintiff's ability to succeed on the merits-to demonstrate that the Chief of the [agency]'s written finding is arbitrary or capricious-faces an uphill battle."); *Advance Sys. Dev.,* 72 Fed. Cl. at 31 (noting disagreement with the *Spherix* opinion that "best interests" requires a lesser showing.). Regardless of whether the standard is less strict for a "best interests" justification than for an "urgent and compelling circumstances" justification, the reasoning provided by the agency in this case does not show how the override is in the best interests of the United States.

We have interpreted the "best interests" justification in a small number of cases, none of which has included agency justifications similar to those in this case. The court came closest in *Spherix,* where the agency's "best interests" justification for an override of an automatic stay was sufficient because the justification emphasized the importance of sticking to a specific timeline for implementation of the services at issue. *Spherix,* 62 Fed. Cl. at 506. In that instance, a stay on the performance of the contract would have jeopardized the ability of the system to be operational during a busy season. *Id.* The key fact in that case dealt with the additional time constraint placed on the Government to meet a go-live date in the contract prior to the use of the system during the busy season. In other words, meeting the deadline was crucial to the purpose of the entire contract. In addition,

the court noted that the particular program was "a Presidential priority, not an ordinary governmental program." *Id.*

Defendant contends that the timing in this case is crucial but does not explain why the timing of performance of the *new* task order is crucial where a continuation or bridge contract could suffice. Instead, defendant simply argues that a lapse in services is an "unacceptable risk."

The agency had ample time to consider such a lapse and take appropriate measures to avoid it. CICA provides an exception to the override when the override is in the best interests of the United States*,* not an individual agency or subset of citizens.[3] We acknowledge the importance of this agency's mission, and we considered carefully whether its constituents could be harmed by a delay, if any. Defendant did not show a direct connection between any possible delay in performance of the *new* task order and a harm that will necessarily affect veterans adversely. Certainly, no claim was made that the program is a "Presidential priority," for example, or that timing of performance of the new task order, as opposed to continuation of the old order or an interim bridge contract, would be crucial to the health or safety of veterans. *See Spherix*, 62 Fed. Cl. at 506.

**B. Legislative Interpretation**

In enacting the automatic stay, Congress provided an automatic and immediate injunction pending the disposition of a bid protest in certain circumstances rather than requiring a protester to incur the onerous burden of proof otherwise required for injunctive relief.[4]

Permitting agencies to override the stay based on broad assertions and routine administrative roadblocks would eviscerate the automatic stay. We have noted that "[t]he automatic stay is intended to preserve the *status quo* during the pendency of the protest so

---

[3] *See PGBA*, 57 Fed. Cl. at 663 (observing that "the statute does not allow the agency to override the stay when it is in the bests interests of that agency or the agency's contracting officials. Rather, the best interests of the 'United States' must be involved and those interests necessarily include weighing the benefits Congress obviously felt were furthered by bolstering the bid protest process and, in turn, promoting competition in contracting.")

[4] *See Supreme Foodservice GmbH v. United States*, 109 Fed. Cl. 369, 397 (2013) ("In creating the CICA stay of performance, Congress decided that the injunctive relief factors need not be invoked when a bid protest is timely filed with the GAO, instead requiring that contract performance be stayed automatically… To allow an arbitrary override to insert the injunctive relief requirements into the process would convert the CICA stay to something other than what Congress created.") (citations omitted).

that an agency would not cavalierly disregard the GAO's recommendation to cancel the challenged award." *Advanced Sys. Dev.*, 72 Fed. Cl. at 30-31 (citing *PGBA,* 57 Fed. Cl. at 660.) "The overarching goal of the stay is to preserve competition in contracting and ensure a fair and effective process at the GAO." *Advanced Sys. Dev.,* 72 Fed. Cl at 31.

Defendant argued in its response to the motion and during the hearing that the services provided by the task order are so crucial that without them, benefits to veterans will be suspended and may result in death. We could not credit this line of argument, however. The agency waited to award this contract until just six days prior to the expiration of the previous task order covering these crucial services. Plaintiff could not have protested the bid until after expiration of the original order. Defendant argued that "it is not possible" to extend the previous order, and to negotiate a bridge contract would take at least 18 to 30 days. Defendant's argument is essentially that the stay must be overridden to avoid a lapse in services because it waited too late; it failed to extend the previous order or enter into a bridge contract.

It is in the interest of the United States that the integrity of the competitive nature of the bid process as mandated by Congress is upheld. *See Reilly's Wholesale Produce*, 73 Fed. Cl. at 716 ("[T]he public's interest likewise lies in preserving the integrity of the competitive process – such, indeed, clearly was Congress' view in providing that except in circumstances not yet demonstrated here, the automatic stay should prevail.") To allow an override based merely on the fact that to work towards a bridge contract, or to have acted timely and negotiated an extension are more difficult to accomplish than continuing to have the incumbent perform the new contract, would allow agency manipulation of a congressional mandate.

### C. Declaratory Judgment

We find it prudent to provide declaratory judgment given the time constraints of this stay. The effect of this judgment will be to reinstate the stay put into place by statute. Defendant contends that injunctive relief is a "drastic and extraordinary remedy that is not to be routinely granted." *Nat'l. Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1324 (Fed. Cir. 2004) (citations omitted). We have considered whether a declaratory judgment in these circumstances requires review and analysis traditionally associated with injunctive relief. Such an analysis, however, is not necessary, as "[d]eclaratory relief preserves the scheme that Congress intended." *Chapman Law Firm Co. v. United States,* 65 Fed. Cl. 422, 424 (2005) (holding that plaintiff need only establish that the override determination is invalid; it need not meet the traditional four-part test for a preliminary injunction to argue successfully that the override should be overturned). Because Congress provided the automatic stay as the default, it is not necessary that additional criteria be met to reinstate a stay that has been overridden by agency action. A ruling that the justification provided for the override was "arbitrary and capricious," as we have entered here, makes it unnecessary to consider additional factors associated with injunctive relief.

## CONCLUSION

The agency has not provided an acceptable rationale for overriding the automatic stay provided for by Congress. Given the standards established by Congress to permit override of the stay, and by court interpretations of those standards, we must direct that the agency's override of the automatic stay invoked upon plaintiff's protest to GAO be, and hereby is **OVERRULED**, and the stay is **REINSTATED** according to the Rules of this court.

The Clerk of Court will enter judgment in favor of plaintiff. This opinion will be filed under seal. No costs.

**IT IS SO ORDERED.**

s/ *Robert H. Hodges, Jr.*
Robert H. Hodges, Jr.
Senior Judge